## BOB HAYNES v. THE STATE.

### No. 2552.   Decided June 18, 1913.

Rehearing denied October 15, 1913.

**1.—Disturbing Religious Worship—Evidence—Imputing Crime to Another.**

Upon trial of disturbing religious worship, there was no error in refusing to permit defendant to show that more than a year prior to the alleged offense and before defendant had moved into the community, someone had shot into the alleged church house; there being no testimony offered as to who did the shooting.

**2.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of disturbing religious worship, there was positive evidence that the defendant was recognized as one of the parties engaged in the disturbance, there was no error in the court's failure to charge on circumstantial evidence. Following Wheeler v. State, 15 Texas Crim. App., 607, and other cases.

**3.—Same—Rule Stated—Juxtaposition.**

If the facts proven are in such close juxtaposition to the factum probandum as to be equivalent to direct testimony, a charge on circumstantial evidence is not required. Following Montgomery v. State, 55 Texas Crim. Rep., 502, and other cases.

**4.—Same—Requested Charge.**

Where, upon trial of disturbing religious worship, the evidence showed that the parties who committed the disturbance were horse-back, testimony as to finding a track which looked like a mule track, etc., would not authorize a requested instruction that if the party rode a mule to acquit the defendant, as such issue was not raised by the evidence.

**5.—Same—Charge of Court—Knowledge of Defendant.**

Where, upon trial of disturbing religious worship, the evidence showed that the defendant knew that the people were at church, there was no error in the court's refusal of requested charges to the effect that if defendant did not know the people were assembled for the purpose of religious worship to acquit him.

**6.—Same—Charge of Court—Principals.**

Where, upon trial of disturbing religious worship, the evidence showed that the two persons who rode by the church, one of them throwing a jug into the church house were acting together, there was no error in the court's refusal of a requested charge that unless the defendant in person threw the said jug to acquit him.

**7.—Same—Definition of Religious Worship.**

Where, upon trial of disturbing religious worship, the evidence showed that the persons assembled at the church had gone there to attend divine services, the fact that the minister did not come to conduct the services would not alter or change the purpose for which they gathered.

**8.—Same—Wilful—Charge of Court.**

Where, upon trial of disturbing religious worship, the court's charge properly defined the term, "wilful," there was no error in refusing a special charge on this subject, or to reiterate the definition throughout the charge.

**9.—Same—Sufficiency of the Evidence—Purpose of Law.**

The law protects a congregation assembled for religious purposes so long as any one of them is on the ground, and the court did not err in so instructing the jury, and where the evidence supported the conviction, there was no error.

**10.—Same—Requested Charges—Practice.**

Where the requested charge was not the law of the case, there was no error in refusing same, although the defendant had been led to believe that the court would submit it.

**11.—Same—Brief—Motion for New Trial—Practice on Appeal.**

Assignments of error presented in counsel's brief which do not appear in the motion for new trial can not be considered on appeal.

Appeal from the County Court of Tyler. Tried below before the Hon. A. G. Reid.

Appeal from a conviction of disturbing religious worship; penalty, a fine of $25.

The opinion states the case.

*Joe W. Thomas,* for appellant.—Upon question of court's refusal of defendant's requested charge that if the party who threw the jug was riding a mule to acquit the defendant: Hall v. State, 153 S. W. Rep., 902; Clay v. State, 65 Texas Crim. Rep., 402, 144 S. W. Rep., 280; Phillips v. State, 26 Texas Crim. App., 228; Meuly v. State, 26 id., 274; Jones v. State, 33 Texas Crim. Rep., 492.

On question of court's failure to charge on circumstantial evidence: Hyden v. State, 31 Texas Crim. Rep., 401; Robertson v. State, 33 id., 366; Cave v. State, 41 Texas, 182; Crowell v. State, 24 Texas Crim. App., 404; Fuller v. State, 24 id., 596; Guajardo v. State, 24 id., 603; Burrell v. State, 18 Texas, 713.

On question of imputing crime to another: Padron v. State, 41 Texas Crim. Rep., 548; Conway v. State, 33 id., 327; Murphy v. State, 36 id., 24; Sapp v. State, 77 S. W. Rep., 456.

On question of identity: Robinson v. State, 60 Texas Crim. Rep., 592, 132 S. W. Rep., 944.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—This is a companion case to that of Lee Laird v. State, recently decided by this court. Appellant and Laird were charged by information with disturbing a congregation gathered for religious worship, convicted, and his punishment assessed at a fine of $25.

The first three bills of exception complain of the action of the court in refusing to permit him to prove that more than a year prior to this occurrence and before appellant had moved into the community, some one had shot into the Cherokee church house. That some person other than defendant may, at some time prior thereto, have committed a crime against this property would tend to elucidate no issue in this case, and would not tend to show who committed the offense on this occasion. There was no evidence offered as to who did the shooting, and no evidence placing such person in proximity to the church on this occasion. Therefore, the court did not err in excluding the testimony.

One of the main contentions of appellant is that the court erred in

refusing to charge on circumstantial evidence, and in refusing his special charge presenting that issue. A short synopsis of the testimony offered by the State is as follows: Miss Ada Barnes testified: "I was at Cherokee church about November the 4th, 1911; we got there about 7 o'clock; we had just arrived, and I had stopped on the front step of the church, and was standing there at the time the jug was thrown through the window, and when I heard the crash of the jug through the window immediately thereafter, just as soon as a person riding fast could travel the distance from the window that was broken to the corner of the house, I saw Bob Haynes and Lee Laird pass the corner of the house, within about six feet of where I was standing. I saw their faces—and recognized them, and I also recognized the horses as the horses of Lee Laird and Bob Haynes, the moon was shining very bright—Lee Laird was riding Bob Haynes' horse and Bob Haynes was riding Lee Laird's horse. Lee Laird's horse is a gray, and Bob Haynes' horse was a sorrel. There was only those two men when they ran by where I was standing. I saw Lee Laird and Bob Haynes again about fifteen minutes after the throwing of the jug, they came back towards the church from the direction they had gone, as they rode by after the throwing of the jug—there was to the best of my recollection six of us at the church at the time, myself, my sister Pearl, my brother Arthur, Miss Nellie Lockhart, Lillian Platt (now Davis) and Lee Vinson. We were there for the purpose of attending church, my father had told us there would be preaching there that night. We were conducting ourselves in a lawful manner."

Miss Nellie Lockhart testified: "I was at Cherokee church November the 4th, 1911. I was sitting by the window that the jug came in at in about three feet of the window. I was not facing the window, but I turned when the jug came in at the window and saw two persons riding off, they were riding a gray horse and a sorrel horse. I did not recognize the parties on the horses; they had their backs to me. There was only two of them, and neither was riding a mule. It was a bright moonlight night. Some ten minutes after the jug was thrown in at the window, Bob Haynes and Lee Laird came up to where we were standing a little distance from the church, and Lee Laird was riding a gray horse and Bob Haynes a sorrel. We were at the church for the purpose of attending preaching. This happened in Tyler County, Texas."

Arthur Barnes testified: "I was at Cherokee church November 4th, 1911. There were six of us went there to preaching. I do not know who threw the jug; they were riding fast. I saw two parties come by after the jug was thrown in at the window, the horses they were riding were Lee Laird's and Bob Haynes'. I did not recognize the parties on the horses. The horses were a sorrel and a gray horse and I saw Laird and Haynes a few minutes after the jug was thrown in at the window and they were riding horses like the parties were riding when the jug was thrown in at the window."

Under every decision rendered by this court since its organization, this testimony would not call for a charge on circumstantial evidence.

Miss Ada Barnes testifies positively she recognized the parties at the time, and the other witnesses testify to such facts and circumstances as would make the case one of positive testimony. Even the defendant's witnesses testify to such facts. Lee Vinson testified for defendant: "I was at Cherokee church house on the night of November 4, 1911. There were six of us. We went there to attend preaching. I was there with Pearl Barnes, now my wife. It was a bright moonlight night. I heard the jug strike the window. I was sitting inside the church. I jumped up and ran to the door, when the jug crashed through the window, and saw the parties riding off. I could not tell who it was, they were riding fast. I could not tell whose horses it was. It might have been mules. I did see Lee Laird and Bob Haynes about ten minutes after the jug was thrown. Lee Laird and Bob Haynes came up to where we were about ten minutes after the jug was thrown; they came from the direction that the parties had gone that ran by at the time the jug was thrown. I saw them again a while afterwards. They passed us on their horses. Laird was riding a gray horse and Haynes was riding a sorrel bald-faced horse." This witness was the only one present on the occasion that appellant introduced. For a long list of authorities holding that such testimony as this does not call for a charge on circumstantial evidence, see Branch's Crim. Law, sec. 203, one of the rules stated being that if the facts proven are in such close juxtaposition to the factum probandum as to be equivalent to direct testimony, a charge on circumstantial evidence is not required, citing Wheeler v. State, 15 Texas Crim. App., 607; Montgomery v. State, 55 Texas Crim. Rep., 502; Holt v. State, 9 Texas Crim. App., 571; Baldwin v. State, 31 Texas Crim. Rep., 589; Adams v. State, 34 Texas Crim. Rep., 470; Holland v. State, 45 Texas Crim. Rep., 172; Smith v. State, 90 S. W. Rep., 638.

The appellant requested the court to charge the jury: "You are instructed by the court, that if you believe from the evidence that the party who threw the jug through the window at Cherokee church on the date alleged in the information in this case was riding a mule, or if you have a reasonable doubt that the jug was thrown by a party riding a horse, in either event you will acquit the defendant." He earnestly insists that the evidence raises this issue, and it was error to refuse this charge. It is seen by the testimony of all the witnesses present on the occasion (heretofore copied) who testify as to the animals, that the parties were riding horses, one a gray and the other a sorrel horse. Now what is the testimony appellant claims raises this issue. Herman Poole testified that Monday morning he examined the ground near the broken window and "found a track which looked like a mule track," but said he would not swear it was a mule track. Prof. Gine Nowlin testified he examined the ground Monday morning after the jug was thrown on Saturday night and "he found but one mule track between the road and the house; that he was raised on a farm and knew a mule track from a horse track; that the track found was about ten feet from

the broken window." He added: "I would not swear positively that the track I saw near the window was a mule track." Willis Bowen testified for defendant that he examined the tracks on Sunday morning and could not tell whether the tracks were made by a mule or horse; there was an old mule that grazes near the church, running around there. The only other evidence offered was the testimony of Clarence Parks and Budd McAlister, who testified that two and one-half miles from this church they saw Hardy Marshall and Louis H. Jordan, and one of them was riding a mule and the other a horse, but no witness places these boys nearer than two and one-half miles of the church. In rebuttal the testimony of Hardy Marshall was introduced, who testified to meeting these boys and stated they were on their way to Joe Goode's to a singing, and other witnesses testify they saw them at the singing. He also testifies they did not go near the church that night.

This is all the testimony on that issue, and in the light of the positive testimony offered by the State that the persons who threw the jug were riding a sorrel horse and a gray horse, the court did not err in refusing the special charge. It may be said that there was no testimony raising that issue.

The defendant asked several charges instructing the jury that if appellant did not know the people were assembled there for religious worship to acquit even though they believed he threw the jug. The testimony is unequivocal that these people at the church had gone there to attend religious worship, assembled there for that purpose, and if appellant threw the jug they were disturbed by such act. Appellant's testimony, while he denies throwing the jug, shows beyond question that he knew these people were there at the church; one witness says one of them dropped his hat and he, witness, picked it up and handed it to him. Under such circumstances the court did not err in refusing the special charges on that issue.

The testimony shows beyond question that the two persons who rode by the church were acting together. Appellant, while admitting that he and Laird were together, says neither of them threw the jug. Under such circumstances the court did not err in refusing to instruct the jury that they must believe beyond a reasonable doubt that appellant Haynes in person threw the jug or they would acquit him. Under the evidence, if either he or Laird threw the jug both would be guilty. There was no testimony calling for special charges Nos. 4, 5, and 6. The testimony of all the witnesses show that the persons assembled at the church had gone there to attend divine services, and the fact the minister did not come would not alter or change the purpose for which they had gathered and assembled at the church.

In his charge the court defined the term "willful" thus: "The word 'wilfully' as herein used means with evil intent, or without reasonable grounds for believing the act to be lawful." Having thus defined the term, it was not necessary to give the special charge defining the word, and neither was it necessary to carry the definition forward in each

paragraph of the charge wherein the word was used. It is the law of this State that the law protects a congregation assembled for religious purposes so long as anyone of them is on the ground, and the court did not err in so instructing the jury, and especially is this true in this case when we read the entire charge of the court. The evidence is, in our opinion, ample to support the verdict. We think the part hereinbefore copied will evidence that fact without a recitation of any other portion of it.

The complaint is made that the court led appellant to believe he would give one of the special charges requested, which the court failed to give, and which appellant says he insisted before the jury was the law of the case, and which the county attorney insisted was not the law, worked injury to his client, and for this reason the case should be reversed. The court states in approving the bill that no such complaint was made at the time of the trial, and it was first complained of in the motion for a new trial. If the charge requested had been the law of the case, of course the failure of the court to have given it would be error, but as we have held herein that the court did not err in refusing to give the charge, the matters stated are not such as would entitle appellant to a reversal of the judgment.

Owing to the earnest insistence of appellant's counsel, we have taken up each and every bill of exceptions and ground in the motion for a new trial, and passed thereon. But those grounds that the able counsel presented in his oral argument before this court and presented in the brief, which do not appear in the motion for new trial, can not be considered by us, and finding no error pointed out in the motion for new trial, nor in any bill of exceptions filed herein, the judgment is affirmed.

*Affirmed.*

[Rehearing denied October 15, 1913.—Reporter.]